## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FUAD MOHAMED DHUUH,

      Plaintiff,

v.

JEFFERSON SESSIONS, Attorney
General of the United States; THOMAS
HOMAN, Director, Immigration and
Customs Enforcement; TWO
UNKNOWN ICE OFFICERS; SCOTT
BANIEKE, U.S. ICE Field Office
Director for Bloomington, Minnesota;
MARK J. MOORE, Director of Krome
Service Processing Center; and ELAINE
C. DUKE, Acting Secretary, Director of
Homeland Security;

      Defendants.

Case No. 0:17-cv-05486-MJD-KMM

**REPORT AND
RECOMMENDAITON**

---

Rachel Petersen, Rachel Petersen Law Office, 10 S. Fifth St. Ste. 1005, Minneapolis, MN 55402, counsel for Plaintiff

Bahram Samie and Ann Bildtsen, United States Attorney's Office, 300 s. 4th Street, Ste 600, Minneapolis, MN 55415, counsel for Defendants

---

## I.    Background

This matter is before the Court for a report and recommendation on Fuad Mohamed Dhuuh's motion for a temporary restraining order. [TRO Mot., ECF No. 2.] Mr. Dhuuh is a native and citizen of Somalia who has been ordered removed from the United States by immigration authorities. He was taken into custody of Immigration and Customs Enforcement ("ICE") officers in August 2017. Along with

91 other Somali nationals, Mr. Dhuuh was placed on a repatriation flight leaving a detention facility in Louisiana and bound for Somalia on December 7, 2017.

Mr. Dhuuh asserts that the flight was poorly or recklessly planned, causing it to become delayed for nearly 20 hours while on a runway in Senegal. Mr. Dhuuh alleges that he and the other detainees aboard the plane were not allowed to de-board during the time the aircraft sat on the runway, remained shackled for that entire period, were denied access to bathrooms and adequate food and water, and were forced to endure the extreme heat when the plane's air conditioning malfunctioned. When some detainees attempted to stand in their seats and stretch during this delay, ICE agents on the plane pushed several of them back into their seats and more violently assaulted others, including Mr. Dhuuh. In particular, Mr. Dhuuh alleges that when he complained that two ICE agents were choking and assaulting another detainee and begged them to stop, one officer slammed his head against the wall of the plane causing his "skull to dent."

Eventually, the flight returned to the United States, and ended up in Miami, Florida, on December 8, 2017. Mr. Dhuuh remains in ICE custody at the Krome Service Processing Center in Miami. As a result of his head injury, Mr. Dhuuh asserts that he suffers from nose bleeds, headaches, blurred vision, and dizziness. He also asserts that he has experienced suicidal ideation. Despite telling staff at the Krome facility about his physical and mental health issues, he has not been provided medical care, was told that ICE would have to approve administration of any medical care, and was told that he would be placed in solitary confinement if he continued to complain.

On December 18, 2017, Mr. Dhuuh filed a Complaint raising three claims arising out of the flight. Pursuant to *Bivens v. Six Unkown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Mr. Dhuuh asserts that his treatment aboard the plane violated his substantive due process rights under the Fifth Amendment and his right to freedom from unreasonable seizures under the Fourth Amendment. Mr. Dhuuh also claims that the conduct of the ICE officials on the plane violated his

rights under the Alien Tort Statute, 28 U.S.C. § 1350. It appears he seeks to recover monetary damages for these first two claims. Finally, Mr. Dhuuh claims that the Defendants violated the Administrative Procedure Act, 5 U.S.C. § 702, entitling him to injunctive relief, including the following:

> (1) requiring an official statement from the Government of Somalia that all detainees being deported will be welcomed and accepted by Somalia "without incident";
>
> (2) requiring a detailed plan for providing detainees with food, water, bathroom access, and reasonable mobility during any subsequent repatriation flight;
>
> (3) requiring a detailed explanation under oath from the Department of Homeland Security describing the contingencies that caused the significant delay on the repatriation flight;
>
> (4) requiring any airport that the next repatriation flight uses to assure that detainees will be permitted to de-board the craft temporarily in reasonable intervals if a lengthy stop is necessary; and
>
> (5) prohibiting the Department of Homeland Security and its agents from attempting to remove Mr. Dhuuh from the United States until the Court receives assurance from a psychological medical professional and a neurologist that his repatriation can be exacted without threat to his health.

[Compl., ECF No. 1.]

The District Court referred the matter to the undersigned for a report and recommendation on the TRO motion, and in light of the representation that another repatriation flight was scheduled for December 20, 2017, ordered that "[d]uring the pendency of th[e TRO] motion, the government is enjoined from removing Plaintiff and . . . he shall remain in the Krome North Detention Center in Miami, Florida until further order of [the District Court]." [ECF No. 7.] The undersigned set an expedited hearing on the motion for 4:45 p.m. on December 19, 2017. Although the government only received notice of Mr. Dhuuh's lawsuit late in the afternoon of December 19, 2017, counsel appeared at the hearing on behalf of the Defendants and opposed Mr. Dhuuh's request for entry of a TRO.

During the hearing, the Court and counsel for the parties learned that United States District Judge Darrin P. Gayles granted a request for a temporary restraining order in a putative class action pending in the Southern District of Florida. *Ibrahim et al. v. Acosta, et al.*, No. 17-cv-24574-GAYLES, Doc. No. 14 (S.D. Fla. Dec. 19, 2017). That putative class action was brought on behalf of the 92 individuals aboard the attempted repatriation flight, which includes Mr. Dhuuh. Judge Gayles enjoined the federal immigration authorities named as defendants from deporting the 92 passengers on the failed repatriation flight until the court could determine whether it has jurisdiction over the lawsuit. Judge Gayles further required the defendants to provide the plaintiffs with adequate medical treatment for any injuries sustained. Judge Gayles's Order remains in effect until 11:59 p.m. on January 2, 2018. Judge Gayles also set a hearing on January 2, 2018 to address the jurisdictional issues raised in the parties' briefs.

## II.    Motion for Temporary Restraining Order

In his motion, Mr. Dhuuh specifically requests that the Court issue a temporary restraining order enjoining the Defendants from removing or causing his removal from the United States until the Court reaches a final decision on the claims raised in the Complaint or the parties resolve the dispute themselves and he receives adequate medical treatment for suicidal ideation and his head injury and is cleared for travel. Further, he asks the Court to enjoin the deportation of any Somali citizens who may have witnessed the events alleged in his Complaint, "including, but not limited to, all detainees aboard the December 7th and 8th failed repatriation mission to Somalia during the pendency of this claim." [TRO Mot. at 1.] Because there is allegedly a "high potential for spoliation of evidence in this case, [Mr. Dhuuh further] asks [the Court] to enjoin the deportation of all Somali Nationals until the Department of Homeland Security furnishes a complete list of detainees aboard the December 7-8 flight to the court and receives court approval for any new flight manifest containing Somali deportees." [*Id.* at 2.]

## A.   Legal Standard

Federal Rule of Civil Procedure 65 allows a court to grant injunctive relief by entering a temporary restraining order or a preliminary injunction. "Injunctive relief is an extraordinary remedy, and the burden rests with the movant to establish its propriety." *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). A district court considers four factors when evaluating whether a temporary restraining order or preliminary injunction is warranted: "(1) the threat of irreparable harm to the movant, (2) the balance between this harm and the injury that the injunction will inflict on other parties, (3) the probability that the movant will succeed on the merits and (4) the public interest." *Id.* (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).

Mr. Dhuuh argues that there is a threat of irreparable harm if the Defendants are not enjoined from removing him to Somalia during the pendency of his case. He asserts that his removal will deprive him of his due process rights by making it more difficult or impossible for him to pursue his claims in this case because he will likely be killed upon returning to Somalia given the conditions in the country. Even if he avoids an untimely death, he asserts that his remoteness from the forum here in the United States and the lack of resources necessary to litigate his case will essentially preclude him from advancing his claims. He also asserts that there is no likelihood he will be able to obtain medical care for his head injury or psychological harm he sustained. Mr. Dhuuh argues that this harm outweighs any potential harm to the government if the injunction is entered. He argues this is so because deportations to Somalia had, until very recently, not occurred for a number of years, and any hardship associated with keeping Mr. Dhuuh and the other 91 individuals at issue is only a minimal inconvenience for the government. He contends that he is likely to succeed on the merits because his injury itself provides physical evidence to support his claims and he will be able to show causation because medical personnel at the Krome facility in Miami have since observed his injuries. Finally, Mr. Dhuuh argues that entry of the

TRO is in the public interest because keeping him and the other individuals on the failed repatriation flight in the United States will serve the public interest in learning what happened aboard the plane. [Pl.'s TRO Mem. at 2-11, ECF No. 3.]

Through counsel's argument at the hearing, the government asserts that Mr. Dhuuh cannot show a threat of irreparable harm, especially in light of Judge Gayles's Order in the *Ibrahim* class action enjoining the government from deporting any of the individuals who were on the failed repatriation until the end of January 2, 2018. The government also asserts that the Court lacks jurisdiction over Mr. Dhuuh's claims, that he seeks extraordinary relief concerning other detainees who his counsel does not represent, and that his TRO asks for relief for himself that cannot be obtained on the claims he raises in his Complaint.

### B.   Analysis

Based on the record before the Court, the arguments of counsel at the hearing, and all the relevant considerations in this matter, the Court concludes that Mr. Dhuuh has failed to meet his burden to show he is entitled to the specific injunctive relief he seeks in his motion. As an initial matter, the Court notes that Mr. Dhuuh did not cite a case in his briefing in which a court entered a preliminary injunction prohibiting the government from removing a civil plaintiff who is subject to a deportation order during the pendency of the action to ensure that the plaintiff will be able to litigate his claims. Nor did Mr. Dhuuh cite a case enjoining the government from removing a potential witness who is subject to removal under federal immigration laws.

In his memorandum, Mr. Dhuuh relied on *Hong v. Agency for Int'l Dev.*, 470 F.2d 507 (9th Cir. 1972), concerning his own removal, and *United States v. Valenzuela-Bernal*, 458 US. 858 (1982), concerning the removal of potential witnesses. However, neither case supports his motion for injunctive relief prohibiting removal of everyone on the repatriation flight until this case is concluded. In *Hong*, the sole issue before the Ninth Circuit was whether the plaintiff had an obligation to exhaust administrative remedies with immigration authorities prior to bringing a contract claim against ICE's

predecessor, the Immigration and Naturalization Service. 470 F.2d at 508. It did not specifically address the propriety of awarding a temporary injunction prohibiting deportation of a removable individual to aid him in litigating his claims. In *Valenzuela-Bernal*, the Supreme Court addressed a criminal defendant's claim that his Fifth and Sixth Amendment rights were violated by the deportation of two individuals during the pendency of a federal prosecution against him for illegally transporting an unlawful immigrant in the United States. 458 U.S. at 860-61. He claimed he was denied the ability to interview the two other men who had been deported and therefore could not obtain evidence that would have supported his defense. *Id.* In considering these claims, the Supreme Court held that the defendant failed to show a violation of his Fifth or Sixth Amendment rights by virtue of the potential witnesses' deportation because he made no plausible showing of how their testimony would be material and favorable to his defense. *Id.* at 872-73. This holding in *Valenzuela-Bernal* is simply inapplicable here.

Turning next to the showing that must be established to obtain a TRO or preliminary injunction, Mr. Dhuuh has failed to show the requisite threat of irreparable harm. To satisfy that burden, Mr. Dhuuh must show "conditions generating a presently existing actual threat; [the power to enjoin] may not be used simply to eliminate a *possibility* of a remote future injury, or a future invasion of rights . . . ." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) (internal quotations omitted) (emphasis added). The status quo for Mr. Dhuuh today is an absence of conditions generating a presently existing actual threat of deportation. His removal is prohibited until at least 11:59 p.m. on January 2, 2018 by Judge Gayles's Order in the *Ibrahim* class action. The same is true for the 91 other individuals who were on the failed repatriation flight.

At the hearing, Mr. Dhuuh's counsel suggested that the *Ibrahim* Order did not remove the threat of irreparable harm because circumstances could change and the threat of deportation would return. But this argument speculates about eventualities that have not occurred. The fear that Judge Gayles will lift his Order in *Ibrahim*

7

presents only a possibility of future injury based on something other than the status quo. However, the Court is not unsympathetic to counsel's concern. If the status quo changes, as counsel argues it could, and Mr. Dhuuh is again under an existing actual threat of removal, nothing in this Report and Recommendation should be construed as precluding Mr. Dhuuh from renewing a motion requesting injunctive relief. Were such a renewed motion to become necessary, the Court expects that the parties would be able to address some of the additional issues flagged in Part III of this Report and Recommendation.

Because the Court finds Mr. Dhuuh has failed to demonstrate the threat of irreparable harm, denial of injunctive relief is appropriate without consideration of the other factors. *Watkins, Inc.*, 346 F.3d at 844; *Bazil v. Wells Fargo Bank, N.A.*, No. 11-cv-1206, 2011 WL 2619095, at *1 (D. Minn. July 1, 2011) ("[L]ack of irreparable harm will preclude preliminary injunctive relief regardless of the other factors.") (citing *Dataphase*, 640 F.2d at 114 n.9).

## III.   Additional Issues

There are several questions that have not been fully addressed by the parties in this action, which are central to the Court's consideration of this matter going forward. As in any case, foremost in the Court's mind is whether it has the power to adjudicate this dispute, and the Court notes that during the hearing the government suggested that the Court lacks jurisdiction over Mr. Dhuuh's claims under 8 U.S.C. § 1252(g). That statute provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* Once the Defendants have been properly served and have entered an appearance, the Court anticipates that the government will raise this issue again and fully brief its position.

The Court has two additional concerns, which may become especially relevant if circumstances change and Mr. Dhuuh renews his request for an injunction prohibiting the government from removing him and the other 91 individuals who were on the attempted repatriation flight throughout the pendency of this action. First, the parties have not yet had the opportunity to address in their briefing whether

any of the claims raised in Mr. Dhuuh's complaint would allow the Court to enter an injunction halting entirely or overseeing the conditions of his future removal. And second, the parties have not yet had an opportunity to fully brief whether a federal court may suspend the removal of potential witnesses to aid a plaintiff in proving his claims in a civil case.

## IV.   Recommendation

For the reasons stated above, the Court **RECOMMENDS** that Mr. Dhuuh's First Motion for a Temporary Restraining Order **[ECF No. 2]** be **DENIED** without prejudice to a renewal of the motion if circumstances concerning the threat of his removal change.

Date: December 20, 2017                    *s/Katherine Menendez*
                                           Katherine Menendez
                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.